UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | : |
| v. | : Crim. No. 21-725 (RDM) |
| KENNETH MASSIE | : |

## MEMORANDUM IN AID OF SENTENCING

COMES NOW Defendant, Kenneth Massie, through undersigned counsel, Stephen F. Brennwald, Brennwald & Robertson, LLP, and submits that a probationary sentence, along with restitution, would constitute a sentence that is sufficient, but not greater than necessary, to accomplish the goals enumerated in 18 U.S.C. § 3553(a) under the unique circumstances of this case.

*Procedural Background*

Mr. Massie is before this Court after having pled guilty to one count of Parading, Demonstrating, or Picketing in the Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). That charge carries a maximum term of imprisonment of 6 months, a fine of up to $5,000, and a term of probation of up to five years. Because the offense is a Class B misdemeanor, the sentencing guidelines do not apply.

He was initially arrested on February 8, 2022, and was released on his personal recognizance. He made his initial appearance in the District on February 17, 2022, and was again released on his personal recognizance.

On February 9, 2022, the government filed a four-count indictment charging Mr. Massie with Entering and Remaining in a Restricted Building, in

violation of 18 U.S.C. § 1752(a)(1), two counts of Disorderly Conduct, and one count of Parading, Demonstrating or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

On October 21, 2022, Mr. Massie pled guilty to the fourth count in the information, acknowledging that he could be sentenced to up to six months in prison, fined up to $5,000, and put on a term of probation not to exceed five years.

He has remained in compliance with his conditions of release since his arrest on February 9, 2022 – a period of over 14 months.

Sentencing has been continued on two occasions because of undersigned counsel's need to adequately prepare this sentencing memorandum.

Mr. Massie is scheduled to be sentenced on Thursday, April 20, 2023.

The government has requested a sentence of 14 days in prison. Defendant requests a sentence that is consistent with the sentence imposed on one of his co-defendants – Luke Faulkner – who pled guilty and was sentenced to a period of probation of 24 months, $500 in restitution, and a $10 special assessment.[1]

***General Background***

Defendant was charged in connection with the tragic events that occurred at the United States Capitol on January 6, 2021.

On that date, Mr. Massie, like thousands of others, came to Washington, D.C. to hear a speech by the former president. After the speech, he, along with

---

[1] The third co-defendant, Jared Kastner, has requested a trial.

many other individuals, and at the direction of the former president, walked to the United States Capitol.  That had never been his intent when he first came to the city.

The attendees who listened to a number of speeches were instructed by various speakers to "fight" to keep the former president in power, and many in the crowd were energized, angry, and spoiling for a fight.  Mr. Massie was not one of those who was spoiling for a fight.

***The Scene Inside and Outside the Capitol that Afternoon***

As this Court surely has discerned, having presided over a number of January 6 cases by now, there were varying levels of participation and action by different people, and groups of people, at the Capitol on that day, both on the grounds outside the building, and inside the Capitol itself.

Some, as has been shown in numerous video recordings, were prepared for battle, wearing military-style outfits, carrying different types of weapons (guns, sticks, batons, flagpoles that were used as weapons, pepper or bear spray, etc.) and implements of battle (zip ties, rope, etc…).

Many of the individuals had also posted messages in various social media platforms before January 6 indicating that it was time for a civil war, and that they would not accept the official results of the election that were certified by the 50 States.

It is fair to say that the crowd, generally, was very angry about the outcome of the election, and strongly disagreed with certification of the votes by various

3

State officials. Some in the crowd had resolved not to allow a peaceful transfer of power to a new administration.

However, it is equally clear that while some in the crowd were prepared for a physical battle, others went there to shout, scream, and protest the official results of the election.

Some entered the Capitol building, while others stayed on the grounds outside the building. A fairly small number of people used violence to break windows and push open doors so that they, and others behind them, could gain entry into the building. And while some people witnessed this violence as it occurred, others arrived after windows had been smashed, and doors had been opened (and barricades removed or pushed aside).

A number of protestors engaged in physical confrontations with police officers, both inside and outside the Capitol. Some of the interactions were quite violent, and caused injuries to a number of officers.

Other protestors destroyed property and otherwise vandalized some areas of some offices inside the building.

Many people shouted various chants, and some shouted at the police officers who were attempting, often in vain, to keep the crowd from entering further into the Capitol building once the crowd had breached the perimeter.

Some individuals threw flagpoles, stolen police shields, chairs, and other objects towards police officers. Some gathered in a lower tunnel (artificially

4

created for the inauguration that was to take place on January 20, 2021) and attempted to push their way into the building that way.

Others sprayed some officers with various substances, and were otherwise very hostile and demonstrative toward the police, aggressively screaming in their faces.

### *Mr. Massie's "Actions" that Afternoon*

Mr. Massie's actions at the Capitol on January 6, 2021, on the other hand, were about as passive as a member of the crowd could have been that day.

While he admits entering the Capitol and knowing that he was not allowed to be there, Mr. Massie only walked through some parts of the Capitol with his two co-defendants and left a mere 13 minutes after he entered the building.

In his post-arrest police interview, he informed authorities that he was caught in the crowd pushing forward inside of the Capitol, and observed other rioters being crushed by the crowd. It was at this point, he said, that he became fearful and told the others in his group that he wanted to leave.

As the photographs of Mr. Massie show, he walked around various parts of the Capitol with a flat affect, his mouth mostly closed.

During his time in the Capitol, he did not incite others to commit any unlawful acts.

He never joining in any negative activity that others engaged in (other than being present in the building).

He never screamed at the police, or taunted them.

He never held a banner or flag or sign.

He never pushed up against a police line, or even joined others in doing so.

He never threw anything at anyone, or even raised his arms or hands.

He did not look angry, upset, or enraged, as many other individuals there appeared to be.

He simply appeared to "be there," walking around and following others into various parts of the building.

As the government notes, at one point he walked by an office and saw that a table had been overturned, but he did not go into that office.

In some sentencing memoranda filed in past January 6 cases,[2] the government listed nine factors it believed courts should assess when considering aggravating or mitigating factors that may or may not apply to a defendant's behavior on January 6, 2021. They are:

1) Whether, when, how the defendant entered the Capitol building;

2) Whether the defendant encouraged violence;

3) Whether the defendant encouraged property destruction;

4) The defendant's reaction to acts of violence or destruction;

5) Whether, during or after the riot, the defendant destroyed evidence;

6) The length of the defendant's time inside the building, and exactly where the defendant traveled;

---

[2] *See, e.g.*, *United States v. Robert Keith Packer*, 21-CR-13(CJN), ECF Doc. 44, at 27.

7) The defendant's statements in person or on social media;

8) Whether the defendant cooperated with, or ignored commands from, police officials; and

9) Whether the defendant demonstrated sincere remorse or contrition.

Taking these factors – which are instructive of a defendant's level of participation in the events of January 6, 2021 – in order, the defendant notes the following:

1). Mr. Massie entered the West side of the Capitol seven minutes after the first person came through. While this does not sound like a great deal of time, he was well back of the front of the line that first breached that side of the Capitol, and waited in line for quite a while before he was able to enter. This means that while he saw people climbing on scaffolding and otherwise acting in a disorderly manner on the outside of the Capitol, he was not at the front of the line when any windows or doors were broken, and did not know, initially, how others before him had gained access to the building.

2). Mr. Massie never encouraged anyone to commit violence, or to enter into certain areas of the building, nor did he exhort anyone to "charge," or to commit any other unlawful act.

3). Mr. Massie never encouraged any property destruction.

4). As to Mr. Massie's reaction to acts of violence, the government seems to concede that when he saw rioters try to push past the police at one point, he informed his two friends that he wanted to leave the Capitol, and they all did. This

would imply that while he may have seen some disorderly conduct before entering the Capitol, he did not anticipate the aggressive actions that some rioters eventually undertook, and when he saw some of them push back against a police line, he immediately indicated a desire to leave the premises.

      5). Mr. Massie did not destroy any property while inside (or outside) the Capitol. As to the destruction of evidence, Mr. Massie indicated in his FBI interview that he had taken some pictures while inside the Capitol and then deleted them.

      6). Mr. Massie, according to the government's sentencing memorandum, was inside the Capitol for 13 minutes.[3] The government describes the locations Mr. Massie saw while inside the building, and notes that he left the building the same way he entered.

      7). The government has confirmed that Mr. Massie had no social media presence at the time of this event. Gov't. Sent. Memo, p. 12 at n. 2.

      8). As to whether Mr. Massie cooperated with, or ignored, any police commands, the defendant notes that he actually spoke with a police officer while inside the Capitol, and when other rioters at some point tried to push past a line of police, Mr. Massie told his friends that he wanted to leave, and he did.

      9). Mr. Massie has expressed a great deal of remorse since the happening of this incident. He was troubled by what he saw inside the Capitol, and left

---

[3] Gov.t Sent. Memo, at 18.

8

promptly upon witnessing acts of unrest and disorder inside the building.  Not only did he and his friends leave the building, but they actually drove out of the city at 4:30 p.m., well before the start of the 6 p.m. curfew that Washington, D.C. Mayor Muriel Bowser had imposed.

The government correctly notes that if Mr. Massie had committed other criminal acts, he would have been charged with further crimes, such that his failure to commit any other criminal acts does not merit any consideration.

While that statement is partially true, the fact is that of all of the people who were in the Capitol on that day, Mr. Massie's actions were at the very bottom rung of criminality, as an examination of the government's nine factors has just demonstrated.

### *Analysis of Sentencing Factors*

As this Court knows, pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and *Gall v. United States*, 128 S.Ct. 586, 596-97 (2007), not only are the United States Sentencing Guidelines no longer mandatory, they are not even presumptively reasonable.  Of course in this case, the sentencing guidelines do not even apply, as the offense to which Mr. Massie pled is considered to be a "petty" offense.

Whether or not the sentencing guidelines apply, in determining an appropriate sentence, this Court must consider the factors delineated in 18 U.S.C. § 3553(a), and impose a sentence that:

  1) reflects the seriousness of the crime;

    2) promotes respect for the law;

    3) provides just punishment;

    4) deters criminal conduct;

    5) protects the public from further crimes, and

    6) provides the Defendant with any necessary educational or vocational training, medical care, or other correctional treatment.

In addition, this Court must also consider

    1) the nature and circumstances of the offense;

    2) the history and characteristics of the defendant;

    3) the kinds of sentences available;

    4) the sentencing range;

    5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and

    6) the need to provide restitution to any victims of the offense.

### *The Proposed Sentence Would Reflect the Seriousness of the Crime*

This memorandum has already addressed the "seriousness of the crime." It has argued that compared to the conduct of all of the other defendants who entered the Capitol on January 6, 2021, Mr. Massie's conduct was about as innocuous as any conduct could have been.

He did not assault anyone, destroy any property, push any officers, help others push any officers, throw any object, chant any chant, raise his fist or arms in anger, shout or berate any law enforcement officer, remain in an area when he was told to leave, or post any boasts or claims on social media.  He also did not give interviews to any news outlets minimizing what happened.

He entered the Capitol a full seven minutes after the doors he went through had been breached, such that he was not "there" when the breach occurred.  He followed others down whatever hallways they traveled, and into whatever great rooms (the Crypt, etc.) they went, not knowing which areas were (usually) public or sensitive.  Moreover, other than his trespass, he never participated in any criminal actions undertaken by others in that vast crowd.

In light of that, he submits that a sentence of probation, along with community service and a fine of $500, would be sufficient, but not greater than necessary, to achieve the goals enumerated in 18 U.S.C. § 3553(a).

The government, in its sentencing memorandum, points to the violence committed by others in the crowd, and argues that this was facilitated by the presence of many persons like Mr. Massie.[4]

That may or may not be true.  Some of the individuals at the Capitol that day were determined to commit acts of violence regardless of who was there.  Mr. Massie cannot be blamed for that.  And the fact that he unlawfully entered the

---

[4] Gov't Sent. Memo, at 2.

11

building did not irresistibly compel any other person to assault a police officer or destroy property.

Counsel recalls the protest marches in January 20, 2017, when hundreds of thousands of people marched to protest the election of the former president.[5]

During that march, some in the crowd stepped a few feet away from the larger group and broke large plate glass windows in banks and in coffee shops. One could argue that the mere presence of so many angry or passionate people in the crowd of marchers on January 20, 2017, somehow emboldened these (apparently Antifa, based on their clothing) individuals to become violent, but that would not be a fair assessment of the alleged role of the crowd in that march. Nor is it fair to impute the actions of a few others to Mr. Massie's mere presence.

While it has become a common refrain to say that "a mob isn't a mob without the numbers," a large group of people who are not attacking any police officers or destroying property should not be automatically accused of unwittingly encouraging troubled individuals in their commission of those acts.

Mr. Massie certainly never said or did anything that would have encouraged or caused anyone else to commit acts of violence, but his mere presence among the crowd is being used to paint him as an aider and abettor of terrible acts perpetrated by deranged individuals. That is not appropriate, or just.

---

[5] Undersigned counsel represented two separate defendants in connection with that prosecution – one person who was merely marching with the crowd, and another who allegedly broke a huge plate glass window at a Bank of America branch. Thus, counsel is intimately familiar with the facts underlying that prosecution, and is able to make an informed comparison between that event and this one.

12

***The Proposed Sentence Must Also Promote Respect for the Law, Provide Just Punishment to Mr. Massie, and Deter Criminal Conduct, both by him and by Others.***

These three goals would be met through the imposition of the proposed sentence under the particular circumstances of this case, for the same reasons presented above.

Notably, and perhaps counter-intuitively, respect for the law is actually ***diminished*** when a sentence is unfairly high. Here, people following Mr. Massie's case could fairly wonder why someone who has no criminal record and who walked into the Capitol, followed others to various places, and walked out after a mere 13 minutes should receive more than a probationary sentence, a period of community service, and an order of restitution.

Again, Mr. Massie's conduct, before, during, and after the relevant events, could not have been any more innocuous than it was.

***The Need to Protect the Public from Further Crimes.***

Imposing a 24-month term of probation in this case would – not that it's needed here – protect the public from any nebulous concerns about any crime Mr. Massie may be tempted to commit in the future.

Mr. Massie is 53 years old. He has no prior convictions. Despite several tragedies in his life (the loss of his first wife, and his second wife being unfaithful to him, and the recent loss of a very good job), he has built a solid foundation in his community, rearing his children in a responsible manner, and maintaining full-

13

time employment. He was in the military for one year, and was honorably discharged.

There is no reason to suspect that he would ever again engage in criminal conduct, as the events of January 6 presented a very unique situation. Moreover, he was fired from his employment fairly recently (though he has since found new employment at a lower income) because of his involvement in this case, and suffered a significant loss of income because of his firing. That, in and of itself, constitutes a significant consequence, and would further deter Mr. Massie from even thinking about committing any other crime in the future.

Further punishment is therefore not required.

***The Court's Duty to Provide the Defendant with any Necessary Educational or Vocational Training, Medical Care, or Other Correctional Treatment***.

Defendant submits that, thankfully, he is not in need of any educational or vocational training services, or specific medical care.

He is employed full-time, and is doing his best to provide for his family.

***The Need to Avoid Unwarranted Disparities***

This factor is often the most difficult one to evaluate, given the differences between defendants in cases such as these. However, this case is unique in the sense that one of Mr. Massie's co-defendants, Luke Faulkner, has already been sentenced by this Court for the same behavior in which Mr. Massie engaged. Mr. Faulkner received a 24-month probationary sentence, was ordered to pay restitution of $500 and a $10 special assessment.

Thus, any other cases to which the government points are not as comparable to Mr. Massie's case as is the case of Mr. Faulkner, especially given the fact that both defendants have similar backgrounds.

*Comparison with of Other Defendants*

A look at all of the foregoing cases demonstrates that Mr. Massie's behavior in the Capitol that day was truly among the most calm, non-confrontational, and non-violent conduct that anyone displayed on that fateful day. While his entry into the Capitol, as well as his meandering behind the crowd into several areas of the building, were wrong, he did nothing violent, said nothing violent, encouraged no violence, posted no inflammatory, proud, or other messages on social media, and did not otherwise engage in any conduct beyond merely being present in the building.

That distinguishes him from so many other defendants, and points toward a probationary sentence and an award of restitution.

**Conclusion**

Mr. Massie is before this Court after having pled guilty to one of the most minor charges to have been lodged against individuals who entered the U.S. Capitol on January 6, 2021.

His conduct is also among the most minor, criminally speaking, of anyone who entered the building that day.

He lost a very good job because of his involvement in this matter, but despite that significant setback, he persevered and found new employment, albeit

at a lower rate. He continues to raise his children, engage meaningfully in his community, and live the best life he can.

Given Mr. Massie's limited behavior on January 6, his steady and full-time employment history, and his remorse about his actions on that day (and determination never to become involved in something like this again), defendant submits that a probationary sentence is appropriate.

If, for some reason, the Court believes that his punishment should be greater, Mr. Massie asks that the Court sentence him to home detention for a limited period of time.

Respectfully submitted,

/s/

Stephen F. Brennwald, Esq.
Bar No. 398319
Brennwald & Robertson, LLP
922 Pennsylvania Avenue, S.E.
Washington, D.C. 20003
(301) 928-7727
(202) 544-7626 (facsimile)
E-mail: sfbrennwald@cs.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was sent by email, this 17th day of April, 2023, to all counsel of record.

/s/

Stephen F. Brennwald

16